## GIVENS v. ARCADIA COTTON OIL & MFG. CO.

### No. 5474.

Court of Appeal of Louisiana. Second Circuit.

June 1, 1937.

Goff & Goff, of Arcadia, for appellant.

R. L. Williams, of Arcadia, for appellee.

TALIAFERRO, Judge.

The subject matter and background transactions serving as the basis of this suit, directly or indirectly, have been alleged upon and considered by the district court of Lincoln parish in three different cases, all of which, including the present, have found their way to this court. Givens v. First Nat. Bank, 18 La.App. 232, 137 So. 908; Givens v. Arcadia Cotton Oil & Mfg. Co., 160 So. 845.

On February 2, 1930, Mrs. C. A. Givens, mother of plaintiff, executed a mortgage against 280 acres of land in Lincoln parish, described as being the E. ½ of N. W. ¼, N. E. ¼ of S. W. ¼, and S. E. ¼, of section 23, township 18 north, range 5 west, to secure the payment of her note for $2,000, in her own favor and by her indorsed, which matured October 1, 1930, and bore interest at the rate of 8 per cent. from date. On the same day R. W. Givens, another son, executed a mortgage on 140 acres of land owned by him in Lincoln parish to secure payment of his own note for $2,000, payable to his order and by him indorsed, which matured on October 1, 1930. The First National Bank of Ruston was applied to by R. W. Givens for a loan to enable him to conduct farming operations during the year and the bank agreed to loan him $2,500 net, secured by pledge of said $2,000 mortgage note. On February 1, 1930, Mrs. Givens and her son R. W. Givens gave to said bank their in solido note for $2,180, with 8 per cent. interest from maturity (October 15, 1930), to which was attached said two mortgage notes for collateral. The proceeds of the $2,180 note were passed to R. W. Givens' credit. Thereafter, beginning April 25, 1930, and ending October 6, 1930, R. W. Givens gave the bank thirteen open notes for various amounts aggregating $630.50, all of which, excepting three, matured October 1, 1930. Whether these notes are secured by pledge of Mrs. Givens' mortgage note, and, if so, to what extent, is a question in the present case and was an issue in two other cases considered by this court. The $2,180 note was paid off by installments, the last payment was made November 3, 1930, by Mrs. Givens. In her letter transmitting the payment, she requested the return of the mortgage note to her. This was declined, but the $2,180 note, marked "Paid," was sent to her. She sold and conveyed the said 280-acre tract to Earl C. Givens on December 30, 1930, and died the following day.

On January 6, 1931, Earl C. Givens, taking the position that the $2,180 note was the only obligation for which his mother's $2,000 mortgage note was pledged to secure, sued out a rule against the bank to show cause why said mortgage note should not be surrendered to him and the mortgage securing same erased from the

records. The suit was given No. 8757 and hereinafter will be referred to by that number.

The bank, inter alia, pleaded that the said $2,000 mortgage note was held as collateral security for the payment of the additional $630.50, with interest and 10 per cent. attorney's fees, due it by R. W. Givens. On this issue the case was tried, resulting in a judgment for defendant, rejecting plaintiff's demands. This judgment did not fix the amount for which said note was held to secure. On appeal to this court said judgment was affirmed. Givens v. First Nat. Bank, 18 La.App. 232, 137 So. 908.

On January 8, 1932, the Arcadia Cotton Oil Mill & Manufacturing Company, defendant in the present case, purchased from said bank the thirteen notes of R. W. Givens, amounting to $630.50, and in conjunction therewith the $2,000 mortgage note of Mrs. Givens was also delivered; and this company (hereinafter called the Mill Company), on June 8, 1933, instituted foreclosure proceedings on the mortgage note, alleging that there was a balance due it thereon of $764, with 8 per cent. interest from November 15, 1931, plus 10 per cent. attorney's fees. All the heirs of Mrs. A. C. Givens were made parties to this suit. The mortgaged property was seized and advertised for sale. The sale was enjoined by five of the six heirs of Mrs. Givens, made defendants in the foreclosure proceedings, including plaintiff herein, on the ground that the principal obligation, for which the mortgage note was pledged to secure, had been fully extinguished by payment. This suit bears No. 9810 and will be hereinafter referred to by that number. As to Earl C. Givens a plea of res judicata was filed and, as to the other plaintiffs in injunction, exceptions of no right and no cause of action were interposed. Both pleas were overruled and on the merits there was judgment for plaintiffs, adjudging the $2,000 mortgage note to have been discharged by payment and perpetually enjoining the sale of the property. On appeal here (160 So. 845), this judgment was reversed, the plea of res judicata was sustained, as was the exception of no right of action. The plea of res judicata was based upon the judgment rejecting Earl C. Givens' demands in suit No. 8757. The exception of no right of action was sustained because the record clearly disclosed that these other heirs had no interest whatever in the 280 acres of land, because their mother had disposed of it prior to her death. They were without any interest whatever in the land or mortgage. After the judgment of this court became final, the land was again advertised for sale in the foreclosure by the Mill Company and the sale again enjoined by Earl C. Givens alone. He does not now assert that the $2,000 mortgage note has been discharged by payment of all of the primary obligations for which it was pledged to secure. His first contention now is that, as this note was delivered to the bank as collateral to a line of credit to R. W. Givens of $2,500 and interest, and as $2,180 was advanced him at one time, of the balance due by R. W. Givens, the mortgage note may only be held to secure $320 thereof, plus interest, attorney's fees, and costs, alleged to be, at the time of filing the present suit, $554.25. This amount was tendered and, on being declined, was deposited in the registry of the court. In the alternative, he contends that the maximum for which the said mortgage note may be held to secure is $630.50.

Defendant in injunction refers to and states the substance of the demands in said suits, Nos. 8757 and 9810, and employing those suits as a basis therefor, moved to dissolve the temporary restraining order sued out for the reason and on the grounds that plaintiff is without right to enjoin sale of the land a second time for causes existing and known to him when the first injunction was prayed for and issued. This motion was overruled. Its substance is reiterated and made a defense on the merits. Also contained in the answer is a plea of res judicata, based upon the judgments in the two former suits. (Nos. 8757 and 9810.) Defendant further contends that the entire $630.50, with interest and attorney's fees, is secured by the $2,000 mortgage note. Its contention in this respect was upheld by the lower court and, from a judgment accordingly, plaintiff has appealed.

There are issues in the present case not enumerated above. We think the defense set up in the motion to dissolve and incorporated in the answer, and the plea of res judicata, should have been sustained and, for this reason, no useful purpose would be promoted by burdening this opinion with details of such omitted issues.

It is a fixed principle of law that multiplicity of suits should be avoided when possible. It also frowns with disfavor upon

litigation designed to harass, or, if not designed to do so, which has the effect of unreasonably harassing and annoying those made parties thereto. In keeping with this principle, it is the law's policy to require those seeking vindication of rights, redress of grievances, and protection from wrong or injustice, to disclose at one and the same time the facts, conditions, and circumstances upon which they depend and rely to secure relief in courts of justice. Defendant invokes this well-established principle against Earl C. Givens who, for the second time, endeavors to prevent a sale of property admittedly mortgaged to the Mill Company to secure a valid debt.

It is well settled that a litigant is without right to provoke issuance of a second injunction on grounds and for reasons existing and known to him when the first injunction was procured by him. McMicken v. Morgan, 9 La.Ann. 208; Trescott v. Lewis, 12 La.Ann. 197; Porter v. Morére et al, 30 La.Ann. 230; Brooks v. Magee, Sheriff, 126 La. 388, 52 So. 551; Schwartz v. Siekmann, 136 La. 177, 66 So. 770, 771; Succession of Marinoni, 183 La. 776, 164 So. 797.

In plaintiff's suit (No. 8757), the bank's position was fully developed by the testimony. He was impressed therefrom that the mortgage note involved was held by the bank as collateral security to R. W. Givens' other notes, aggregating $630.50. He cannot now, and does not, plead ignorance of the bank's position when he joined in suit No. 9810, the cause of action therein alleged being identical with that laid down in suit No. 8757. The very issues tendered in the present injunction suit could have been, and in law should have been, tendered in suit No. 9810. He is now cut off from asking the court to adjudicate upon the belated question.

In the McMicken Case, it was held: "A judgment rendered between the parties, dissolving a prior injunction, is a bar to any enquiry into the grounds for injunction existing anterior to that judgment, and of which the party might then have availed himself."

There was involved in the Trescott Case a rule to show cause why the seizure made under a judgment should not be released and the execution quashed on several alleged grounds. Issue was joined and on trial there was judgment for defendant and against plaintiff in rule decreeing that the rule be discharged at plaintiff's cost. Thereafter, the same plaintiff sued out an injunction against execution of the same writ, based substantially upon the same grounds relied upon in the rule. Defendant in the injunction case interposed a plea of res judicata and at the same time filed another plea in these words: "In this case Hart, Labatt & Co. now come, in addition to the exception of res judicata herein filed, further excepting, say, that said Lewis had no legal right to obtain said injunction, for the reason that he had previously taken a rule upon these defendants to dissolve the execution herein; that said rule had and was designed to have the same effect as an injunction, viz; the dissolving of the execution and release of the property seized, and was really a substitute for one; and that the facts set up in said petition, if they ever existed at all, existed at the time of the taking of said rule, and that said rule having been dissolved, he is precluded from setting up any matters existing at or prior to the time when it was taken."

The lower court overruled this plea. The plea was upheld by the Supreme Court. It was held by the court, "The judgment discharging the rule was precisely equivalent to a judgment dissolving an injunction, in lieu of which the rule was taken."

The facts of that case bear marked resemblance to the one at bar.

In the Porter Case, supra, the court employed this very positive language in disposing of a second injunction: "The plea of res judicata is a bar to this suit. All the grounds for injunction set up in the second suit existed prior to the first, and some of them were specially pleaded in the first petition. A judgment between the same parties dissolving an injunction is a perpetual bar to subsequent contestation upon grounds that existed anterior to the suit in which the judgment of dissolution was rendered, and of which the plaintiff in injunction might have availed himself in the first instance;" and closed discussion of the question with this sentence: "The reason of the rule is obvious, and the statement of it is its justification. A creditor might be perpetually baffled if successive injunctions could issue from the same court on the same grounds, and thus the door would be opened to endless litigation."

The syllabus in the Brooks Case, supra, reads as follows: "Plaintiff, in a suit for an injunction to prevent the seizure and sale of his property, cannot withhold

grounds which he should have stated, and then, when he is cast in the action, file another suit, setting forth the facts originally alleged and those withheld."

And the Schwartz Case, supra, supports this doctrine. The court therein cogently reasons as follows: "The legal principle which precludes a second injunction would amount to very little if the law of which the litigant was ignorant at the time of the first injunction could serve as an excuse for urging in a second injunction the grounds that should have been urged in the first. We do not mean to intimate that ignorance of the facts would justify a second injunction; for, on the facts, as well as on the law, the litigant must say all he has to say in his first injunction, or forever thereafter hold his peace."

For the reasons herein assigned, the judgment appealed from is affirmed, with costs.